JOAN BERNARD ARMSTRONG, Chief Judge.
 

 |,STATEMENT OF CASE
 

 On May 20, 2009, the defendant/appellant, Henry Phillips, was charged with one count each of purse snatching and extortion. He entered a not guilty plea on May 26, 2009, and on July 2, 2009, the district court found probable cause and denied the motion to suppress the evidence. The motion to suppress the identification was denied prior to trial on October 19, 2009. The State nolle prosequied the extortion count and proceeded to trial on the purse snatching count where the defendant was found guilty as charged. The defendant was sentenced on November 9, 2009 to serve ten years at hard labor, to run concurrently with any other sentence he may be serving. On December 2, 2009, the district court denied a motion to reconsider sentence. The defendant was subsequently adjudicated a third felony offender. Thereafter, on January 20, 2010, he was resentenced pursuant to La. R.S. 15:529.1 to serve life imprisonment at hard labor. This appeal follows.
 

 \ STATEMENT OF FACT
 

 The victims, Tracie and Jason Socha, visitors from San Diego, California, were in New Orleans on March 21, 2009 to attend a friend’s wedding. That morning, after they finished breakfast, they stopped at a McDonalds located on St. Charles Avenue to purchase a milkshake. Mr. So-cha gave his wallet to his wife. She entered McDonalds while he waited outside. After she made her order and paid the cashier, Mrs. Socha placed the wallet on the counter while she waited for her change. She may have had a finger on the wallet. At the very least, her hand was next to the wallet. A man then came up from behind her and grabbed the wallet. Mrs. Socha ran out of McDonalds after the man and called to her husband. The So-chas caught up with him when he stopped next to a bright blue bicycle. Mr. and Mrs. Socha attempted to talk the man into taking only the cash from the wallet and giving the wallet back to them. At first, the man declined. He also moved his hand towards the waist of his pants and asked them whether they wanted to be shot. Mr. Socha continued to talk to the man despite the threat. After a minute or two, the man took a twenty dollar bill that was clipped to the outside of the wallet and threw the wallet to the ground. The man then got on his bicycle and left. Employees of McDonalds followed the man on his
 
 *133
 
 bicycle to a house located a block behind the McDonalds on Carondelet Street.
 

 Sergeant Young responded to the call and met with Mr. and Mrs. Socha in the parking lot of McDonalds. The sergeant then took them to the house on Carondelet Street where they could see the blue bicycle parked out front. A door on one of the apartments at the house was partially opened. Sergeant Young called for backup. Once Sergeant Philibert arrived, the two officers entered the opened | sdoor and encountered two males. One fit the description of the perpetrator who had been described as an older black male wearing a blue and white shirt. The man was escorted from the house and positively identified by Tracie and Jason Socha as the perpetrator. The man was arrested. A search incident to his arrest revealed a twenty dollar bill in the front pocket of his pants.
 

 Both Tracie and Jason Socha identified the defendant in court as the man who took Mr. Socha’s wallet. The jury also viewed a surveillance tape taken at the McDonalds restaurant and listened to the 911 call made by a manager of Mc-Donalds.
 
 [1]
 

 ERRORS PATENT
 

 A review of the record reveals one errors patent. The district court did not restrict parole eligibility as required by La. R.S. 15:529.1. Although the district court did not restrict parole eligibility on the sentence, La. R.S. 15:301.1(A) self-activates the correction and thus, eliminates the need to remand for a ministerial correction of the sentence.
 
 State v. Williams,
 
 2000-1725 (La.11/28/01), 800 So.2d 790.
 

 ASSIGNMENTS OF ERROR
 

 The defendant, through counsel, raises three assignments of error in his original brief and three assignments of error in his pro se supplemental brief. We address these assignments of error as follows:
 

 J¿ASSIGNMENT OF ERROR NUMBER 1
 

 By his first assignment of error, the defendant asserts that the district court erred by denying his post-verdict judgment of acquittal. He argues that the evidence was insufficient to convict beyond a reasonable doubt.
 

 In
 
 State v. Brawn,
 
 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Neal,
 
 00-0674, (La.6/29/01) 796 So.2d 649, 657 (citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)).
 

 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
 
 Neal,
 
 796 So.2d at
 
 *134
 
 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under
 
 Jackson
 
 to prove guilt beyond a reasonable doubt to a rational jury.
 
 Id.
 
 (citing
 
 State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986)).
 

 Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon. La. R.S. 14:65.1. The defendant argues that the State failed to prove that the wallet was in the immediate control of Mrs. Socha when it was snatched.
 

 Situations in which the wallet or purse was not in the physical possession of the victim at the time it was snatched have been addressed by this court and the Louisiana Supreme Court.
 

 | sIn
 
 State v. Anderson,
 
 418 So.2d 551 (La.1982), the court held that a purse snatching did not require an actual face-to-face confrontation. It then affirmed a conviction for purse snatching where the victim’s purse had been taken from the floor near her legs. In
 
 State v. Pierre,
 
 2004-0010 (La.App. 4 Cir. 2/25/04), 869 So.2d 246, this court found that the evidence was sufficient to show that the victim’s purse was in her immediate control when the defendant snatched the victim’s purse that was lying next to her on the counter of a grocery store.
 

 As in
 
 Anderson
 
 and
 
 Pierre,
 
 the wallet that was snatched by the defendant was in the immediate control of Mrs. Socha. The wallet was lying right next to her hand on the counter of the McDonalds, and she may have even had a finger on the wallet. This assignment of error lacks merit.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 By his second assignment of error, the defendant maintains that the district court abused its discretion when it sentenced him to the life sentence mandated by La. R.S. 15:529.1 without any inquiry as to whether the sentence was excessive under the facts of the case as required by
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). He urges that the district court erred in finding that it had no discretion to impose a lesser sentence.
 

 However, the record shows that defense counsel neither objected when the court imposed the life sentence following the multiple offender adjudication nor did he file a motion to reconsider sentence as mandated by La.C.Cr.P. art. 881.1. This court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a J^claim regarding his sentence on appeal.
 
 State v. Wilson,
 
 2006-1421, p. 16 (La. App.3/28/07), 956 So.2d 41, 51;
 
 State v. Rodriguez,
 
 2000-0519, p. 14 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 649;
 
 State v. Tyler,
 
 98-1667, p. 14 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 775.
 
 [2]
 
 Therefore, this assignment of error was not preserved for review. Even if it had been preserved for review, the defendant failed to make the requisite showing that a lesser sentence should have been imposed.
 

 In
 
 State v. Rice,
 
 2001-0215, p. 5-6, (La.App. 4 Cir. 1/16/02), 807 So.2d 350, 354, this court reviewed the nature of the habitual felony offender sentencing scheme and the standard for departing from it:
 

 Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive
 
 *135
 
 if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.
 
 State v. Johnson,
 
 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677;
 
 State v. Dorthey,
 
 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional.
 
 Johnson,
 
 97-1906, pp. 5-6, 709 So.2d at 675;
 
 see also State v. Young,
 
 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality.
 
 State v. Francis,
 
 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 
 State v. Lindsey,
 
 99-3256, p.J^ (La.10/17/00), 770 So.2d 339, 343;
 
 Johnson,
 
 97-1906, p. 8, 709 So.2d at 677. “Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.”
 
 Id.
 

 Prior to being sentenced, the defendant addressed the court. He stated that he was fifty-three years old and that he is a high school graduate. He worked three jobs since his release from prison two years ago. The defendant urged that he never hurt anyone during any of his crimes and that he was never found with a weapon. He also stated that he has an unspecified illness and that he has children and grandchildren. Finally, the defendant argued that he only committed a theft upon the victims here.
 

 None of the mitigating factors presented by the defendant overwhelms the presumption that the legislatively-mandated sentence was appropriate. His two prior convictions were for simple robbery and armed robbery. In the case at hand, the defendant implied that he had a weapon and threatened to shoot the victims.
 

 Notably, the defendant committed his offense after the effective date of the amendments reducing the mandatory minimum sentence for habitual offenders. Thus, even after the legislature decided to reduce sentences for a variety of offenses and offenders by passing Act 403, a life sentence was still the minimum which could be imposed on the defendant under La. R.S. 15:529.1(A)(2)(b)(i)(ii). The life sentence was mandatory because the instant felony conviction and two of his prior felony convictions were crimes of violence as defined by La. R.S. 14:2(13). Thus, despite his attempt to present mitigating factors to the court, the defendant failed to provide substantial evidence that exceptional circumstances justified a downward departure from the mandatory term of life imprisonment. See
 
 State v. Trackling,
 
 2007-0068 (La.App. 4 Cir. 5/16/07), 958 So.2d 1209. Accordingly, the district court did not err when it imposed a life sentence.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 By his third assignment of error, the defendant contends that the evidence presented at the multiple bill hearing was insufficient because the State failed to present a contemporaneous record of his prior guilty plea colloquies.
 

 The record contains no written response to the multiple bill as required by La. R.S.
 
 *136
 
 15:529.1(D)(l)(b), and there was no oral objection made at the multiple bill hearing raising this issue. Therefore, appellate review of whether the defendant was properly
 
 Boykinized
 
 on the prior convictions is precluded. See
 
 State v. Cossee,
 
 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER ONE
 

 In his first pro se assignment of error, the defendant asserts that the state knowingly presented the perjured testimony of Mrs. Socha to prove that she had immediate control over the wallet when she testified that she may have had a finger on the wallet as it lay on the counter at McDonald’s. He urges that her testimony conflicts directly with the video tape of the incident that was played for the jury. He also claims that her testimony conflicts with the motion hearing testimony of Sergeant Young wherein Sergeant Young testified that the wallet was placed on the counter momentarily while Mrs. Socha talked to the cashier. The defendant insists that the state’s sole purpose for using the alleged perjured testimony was to upgrade a misdemeanor theft to a felony and subsequently charge him as a multiple offender.
 

 Where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness’s testimony [ treasonably could have affected the jury’s verdict, even if the testimony goes only to the credibility of the witness.
 
 Napue v. Illinois,
 
 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959);
 
 State v. Broadway,
 
 96-2659, p. 17 (La.10/19/99), 753 So.2d 801, 814;
 
 State v. Williams,
 
 338 So.2d 672, 677 (La.1976). To prove a
 
 Na-pue
 
 claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony.
 
 Broadway,
 
 96-2659, p. 17, 753 So.2d at 814. Furthermore, fundamental fairness, i.e., due process, is offended “when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.”
 
 Napue,
 
 360 U.S. at 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217. When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial.
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, the grant of a new trial based upon a
 
 Napue
 
 violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material.
 
 United States v. O’Keefe,
 
 128 F.3d 885, 893 (5 Cir.1997).
 

 Nothing that the defendant presents reflects that the state acted in collusion with Mrs. Socha when she testified that she “may” have had a finger on the wallet. Also, as previously referenced herein, Mrs. Socha was not required to be in physical control of the wallet when it was snatched. Thus, her statement that she may have had a finger on the wallet was not material and did not affect the outcome of the trial.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER TWO
 

 The defendant’s second pro se assignment of error maintains that the district court erred by denying his motions for new trial and post-verdict judgment of | inacquittal on the grounds that the evidence was insufficient. This assignment of error was also raised by defense counsel. We find that it lacks merit for the reasons previously discussed herein.
 

 PRO SE ASSIGNMENT OF ERROR NUMBER THREE
 

 The defendant argues in his third pro se assignment of error that the bill of
 
 *137
 
 information was defective because it failed to cite the statute.
 

 A post-verdict attack on the sufficiency of an indictment does not provide grounds for setting aside a conviction unless the indictment failed to give fair notice of the offense charged, or failed to set forth any identifiable offense.
 
 State v. Cavazos,
 
 610 So.2d 127 (La.1992). The Louisiana Code of Criminal Procedure article 464 provides:
 

 The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead' the defendant to his prejudice.
 

 In the present case, the defendant was charged with a violation of La. R.S. 14:65.1. Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
 

 Count one of the bill of information alleged that the defendant “committed theft of a wallet from the person or within the immediate control of Traci Socha, by use of force, intimidation, or by snatching.”
 

 While the bill of information does not track the exact language of the statute _JjjOr cite the statute, it gives fair notice of the crime of which the defendant was charged and ultimately convicted, that is, purse snatching. Thus, the bill of information complies with La.C.Cr.P. article 464 in that it did not mislead defendant to his prejudice. This assignment of error also lacks merit.
 
 [3]
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the defendant’s conviction and sentence.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . Sergeant Brisoce, who works in the Communications Division of the police department, testified as to the authenticity of the 911 tape heard by the jury. John Preston, a facility manager with McDonalds who maintains the surveillance tapes taken at the restaurant, testified as to the authenticity of the tape viewed by the jury.
 

 [2]
 

 . Counsel filed a motion specifically seeking to have the ten-year sentence imposed on November 9, 2009 reconsidered. The motion was denied on December 2, 2009.
 

 [3]
 

 . The defendant also attaches a motion for an evidentiary hearing to which he is not entitled on appeal.