DANIEL L. DYSART, Judge.
 

 [,The defendant-appellant, Karma Landfair, appeals his conviction for first degree robbery, his adjudication as a fourth offender, and his sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence. He assigns no error as to the conviction for first degree robbery, and as there are no errors patent that require reversal of that conviction, his conviction is affirmed. Furthermore, for the reasons set forth below, his adjudication and life sentence as a fourth offender pursuant to La. R.S. 15:529.1 are affirmed.
 

 PROCEDURAL HISTORY OF THE CASE
 

 On January 24, 2008, the State filed a bill of information charging the defendant with one count of violating La. R.S. 14:64 relative to armed robbery. The defendant entered a not guilty plea at arraignment. At a motion hearing held on December 10, 2008, the court heard testimony in connection with the defendant’s motion to suppress his statement. The court denied the motion on January 7, 2009. A jury trial commenced on March 3, 2010 and concluded the following day when the twelve-person jury returned a responsive verdict of guilty of violating La. R.S. 14:64.1, first degree robbery. On March 31, 2010 the court sentenced the defendant to thirty years at hard labor. The State then filed a multiple bill of information charging the defendant as a fourth offender, and on [ 2June 18, 2010, the defendant filed a motion to quash the bill. The trial court conducted a hearing on the multiple bill on August 26, 2010. After finding that the State had proved the allegations in the bill, the court vacated the prior sentence it had imposed and resentenced the defendant to serve life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. This appeal followed.
 

 STATEMENT OF THE FACTS
 

 On November 24, 2007, Ms. Leshay Sha-bazz was working at the Empress Hotel located at 1317 Ursulines Street. Near the end of her shift, at approximately 10:00 p.m., a man wearing a mask and carrying a gun knocked on the counter which separated the office area from guests. The man jumped over the counter and demanded keys. When she handed him one set, he demanded a different key: the one Ms. Shabazz used to secure the hotel’s money while she was on her shift. Ms. Shabazz realized that she had seen the man off and on throughout the day and that he both worked and lived at the hotel. She knew his first name only as Karma.
 

 Detective Robbie Bangham and his partner, Officer Amon Clavo, heard the radio
 
 *1064
 
 dispatch of the robbery at the hotel. Included in the dispatch was a description of the perpetrator being a black male, six feet tall, wearing all black clothing, and silver tennis shoes. At the time of the dispatch, the officers were on patrol approximately five blocks from the hotel and began to canvass the area. When they reached the 1300 block of Governor Nicholls, which was one block from the hotel, they saw the defendant exiting an alleyway which led toward the back of the Empress Hotel. The defendant was wearing blue jeans, a white t-shirt, and silver tennis shoes. The officers stopped the defendant and asked him why he was coming out of the alley. The defendant was unable to give a reason and | ¡¡became obviously nervous. The officers transported the defendant to the hotel, where other detectives had arrived to investigate the robbery.
 

 Lt. Errol Foy, the First District Investigative Unit Commander, was one of the officers who responded to the robbery. Under his direction, officers viewed the hotel’s surveillance tape which showed the robbery. Because of the mask, the man’s face was not visible on the video. However, the defendant’s tennis shoes clearly matched those the perpetrator was wearing. The defendant was advised of his rights and confronted with the evidence. The defendant admitted to having committed the robbery. Lt. Foy then arranged for the defendant to give a videotaped statement. Both the surveillance video and the taped statement were introduced at the trial. The money stolen in the robbery was found in the defendant’s shoes.
 

 During his taped confession, the defendant described the place where he had disposed of the gun and the black shirt he wore over his t-shirt. He then accompanied officers to the location and pointed out where the evidence was, which included the shirt and the gun, which was used in the robbery. In his taped statement the defendant expressed remorse for the crime and blamed it on his drug addiction.
 

 The defendant testified on his own behalf. He claimed that he was walking from a friend’s house when he was stopped by “Officer Robbie” who hit him in the face until Officer Clavo intervened. Next, according to the defendant, the officers returned him to the hotel, took his shoes inside, came back, and hit him in the face with a shoe, saying he had lied. The defendant said other officers also pushed him around while asking about the gun. The defendant claimed that he was told what to say to the camera during the taped confession, and that he and his girl-friendjjwere threatened. He testified that the money found in his shoe came from winning at the casino.
 

 Det. Bangham and Officer Clavo testified at the trial that the defendant did not resist during his apprehension. They denied ever hitting him.
 

 The defendant admitted that he had a criminal history involving cocaine. During cross-examination, he admitted that he had been convicted of distribution of cocaine once and had been convicted of possession of cocaine with the intent to distribute three times. When asked if he had a cocaine use problem or a “cocaine dealing problem,” the defendant stated, “That’s what I was, a dealer.” On redirect, the defendant testified that he pled guilty to all of the offenses involving cocaine, but that he was not pleading guilty to the armed robbery charge because he did not do it.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals none.
 

 
 *1065
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In his first assignment of error the appellant asserts that the trial court should not have found him to be a fourth offender. In connection with this assignment, the appellant makes four arguments, which will be addressed separately.
 

 Louisiana Constitution Requires Grand Jury Indictment
 

 The appellant asserts that his Due Process rights were violated at the multiple bill hearing because he was exposed to a mandatory life sentence if adjudicated a fourth offender, and in fact received a life sentence. Therefore, he contends, he should have been charged by grand jury indictment for both the original substantive offense of armed robbery and as a fourth offender under La. R.S. 15:529.1. In support of his argument, he cites Article I, Section 15 of the ^Louisiana Constitution of 1974 which provides that, for a crime punishable by life imprisonment, prosecution must be instituted by a grand jury indictment.
 

 This same argument has been asserted and found to be without merit multiple times by this Court. For example, in
 
 State v. Vincent,
 
 2010-0764, pp. 9-10 (La. App. 4 Cir. 1/19/11), 56 So.3d 408, 414-15, this Court explained that
 

 [T]he Louisiana Constitution of 1974 does not require that the District Attorney institute proceedings by a bill of indictment where the maximum penalty for the charge is less than life imprisonment. The constitution mandates that prosecution of felonies be initiated by indictment or information applies only to the substantive crime for which the accused is charged. La. Const.1974, art. I, § 15; La.C.Cr.P. art. 382. In
 
 State v. Alexander,
 
 325 So.2d 777, 779 (La.1976), quoting
 
 State v. Jackson,
 
 298 So.2d 777 (La.1974), the Court reasoned that the “(bill of) information [charging the defendant as a multiple offender] does not charge a crime but is merely the method of informing the sentencing court of the circumstances and requesting an enhancement of penalty.” Thus, the enhanced penalty proceeding does not charge the defendant with a crime; consequently no indictment is necessary.
 
 Id.
 
 Moreover, the charging instrument is dependent upon the classification of the substantive crime charged, not the enhanced penalty to which an individual may be subject upon conviction.
 
 Id.
 
 In
 
 State v. Tassin,
 
 08-0752, p. 9 (La.App. 3 Cir. 11 /5/08), 998 So.2d 278, 285,
 
 writ denied
 
 08-2909 (La.9/18/09), 17 So.3d 385, the defendant asserted that the
 
 State v. Alexander
 
 needed to be reconsidered in light of
 
 U.S. v. Booker,
 
 543 U.S. 220 [125 S.Ct. 738, 160 L.Ed.2d 621] (2005). The court reasoned that
 
 Booker
 
 was not applicable because it did not address a recidivism statute.
 
 Id.
 
 at 238 [125 S.Ct. 738]. Thus, the
 
 Tassin
 
 court concluded that
 
 State v. Alexander
 
 was still “good law.”
 

 Because the appellant was charged with violating La. R.S. 14:64, which carries a maximum penalty of ninety-nine years and not life imprisonment, there was no requirement that the prosecution be instituted by grand jury indictment.
 

 Right to Trial by Jury
 

 The appellant asserts next that under the Fourteenth and the Sixth Amendments to the U.S. Constitution, he was entitled to have a jury decide if he is a multiple offender. He argues that the United States Supreme Court cases of
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and
 
 Shepard v. |6 U.S.,
 
 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), provide only that the bare existence of a prior conviction does not need to be determined by a jury. Anything else, such as the identity
 
 *1066
 
 of a defendant as the person who was previously convicted, must be decided by a jury-
 

 Again, the argument that a defendant is entitled to a jury trial in connection with a multiple offender proceeding pursuant to La. R.S. 15:529.1 has been rejected multiple times, including by this Court in
 
 Vincent,
 
 2010-0764, pp. 10-11, 56 So.3d at 415;
 
 State v. Juengain,
 
 2009-0425, p. 11 (La. App. 4 Cir. 1/20/10), 41 So.3d 499, 506-07; and
 
 State v. Smith,
 
 2005-0375, pp. 3-5 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 839-840. The appellant cites no new jurisprudence from the Louisiana Supreme Court or the United States Supreme Court that casts doubt on these decisions. This argument has no merit.
 

 Furthermore, the issue of the right to a jury trial was not raised at the multiple offender hearing or prior to the hearing in the motion to quash the multiple bill. No motion to reconsider sentence was filed. Thus, the issue was not preserved for future review. See
 
 State v. Smith,
 
 2007-1432, pp. 4-5 (La.App. 4 Cir. 7/2/08), 989 So.2d 816, 819.
 

 Proof of Elements of La. R.S. 15:529.1
 

 In addition to the alleged denial of his constitutional rights discussed above, the appellant argues that the State failed to provide sufficient proof at the hearing to establish that he was the person convicted in the predicate cases listed in the multiple bill and that the guilty pleas given in the predicate cases were validly made. However, the record demonstrates that there were no objections to the State’s proof on these issues. Furthermore, although a motion to quash the multiple bill was filed, the basis for the motion was that the State was improperly 17using convictions entered on the same date to multiple bill him. No other written response or objections were made to the predicate convictions. As such, the appellant failed to preserve his claims that the State did not prove his identity and the validity of the prior pleas.
 

 In
 
 State v. Cossee,
 
 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this Court discussed the procedural requirements for objecting to the sufficiency of State’s evidence regarding a defendant’s prior convictions:
 

 Following the Louisiana Supreme Court decision in
 
 State v. Shelton,
 
 621 So.2d 769 (La.1993), the Louisiana Legislature amended La. R.S. 15:529.1(D)(1)(b) to place the burden of challenging a predicate conviction in a multiple bill proceeding on the defendant. That subsection now provides, in pertinent part:
 

 Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack a sentence.
 

 Cossee,
 
 95-2218, p. 2, 678 So.2d at 73 [Emphasis added]. See also
 
 State v.
 
 
 *1067
 

 Randall,
 
 2010-0027 (La.App. 4 Cir. 10/27/10), 51 So.3d 799.
 

 The motion to quash the multiple bill was filed on June 18, 2010. In it, the defendant averred that, “The State of Louisiana has violated this Defendants [sic] rights and that it is using several convictions to which defendant pled guilty to at | S[sic] the same time.” Also, in the motion, defendant contended, “There is recently legal authority in support of Defendant’s claim which Defendant will submit and argue in a Memorandum of Law.”
 
 (Id.)
 
 The record does not contain a supporting memorandum.
 

 At the multiple bill hearing after the fingerprint expert, Officer Joseph Pollard, testified on direct examination, defense counsel cross-examined Officer Pollard on whether he had “any knowledge of whether this is [sic] arrests, convictions, each of these particular instances stems from an arrest and a conviction in sequence, or just all pleaded at one time?” Counsel did not question Officer Pollard regarding his testimony on the identity of the defendant as the person previously convicted. Furthermore, after Officer Pollard finished his testimony and the State offered its in glo-bo exhibits S-l through S-4, defense counsel stated that he had no objections.
 

 Defense counsel argued only that “traditional law suggests that we would have arrest, conviction; arrest, conviction; arrest conviction; a three strikes you out.” The trial court responded that, “It used to be that way.”
 
 (Id.)
 
 Defense counsel argued that the defendant’s prior convictions were not crimes of violence, but rather were narcotics offenses, and petitioned the court to exercise its discretion to impose a sentence less than the mandatory life imprisonment. Defense counsel next asked the court to consider modifying the jury verdict to attempted first degree robbery so that “it would not be a crime of violence conviction” and thus would not require a mandatory life sentence.
 

 At no time did defense counsel argue that there was any defect in the validity of the prior guilty pleas or that the State had failed to prove that the defendant had been previously convicted in the cases alleged in the multiple bill of 19information. The only formal objection made was a general objection made after the trial court found the defendant to be a fourth offender, set aside the prior sentence, and refused to impose a sentence below the statutory minimum after considering defense counsel’s argument that the defendant’s prior drug offenses justified a lesser sentence. No oral or written motion to reconsider sentence was filed.
 

 At trial, the defendant admitted that previously he had pled guilty to distribution of cocaine and had pled guilty to possession of cocaine three times. Furthermore, the sentencing transcript of March 31, 2010 reflects that the State intended to go forward with the multiple bill hearing on that date. Defense counsel indicated that he wanted a continuance because the defendant was facing a life sentence, and the court granted it. The prosecutor asked that the defendant be fingerprinted, which he was.
 
 [1]
 
 The prosecutor also stated that the defendant had five prior convictions, but the State had only listed three in the multiple bill of information. He then asked that the record “reflect that the State has turned over five cert packs on Mr. Landfair, and which Mr. Pryor said he will review.” The court
 
 *1068
 
 set the multiple bill hearing for April 21, 2010, which was continued several times. Defense counsel filed the written motion to quash the multiple bill on June 18, 2010, two months after he received copies of the State’s evidence of the prior convictions, and two months before the hearing was held on August 26, 2010.
 

 The prior convictions alleged in the multiple bill of information were all from the Twenty-Fourth Judicial District Court for the Parish of Jefferson. They | ¡ (¡included the following: (1) in case number 97-0241, a plea of guilty as charged to possession of cocaine with the intent to distribute on April 15, 1997; (2) in case number 95-4684, a plea of guilty as charged to possession of cocaine with intent to distribute on September 13, 1995; and (3) in case number 97-6166, a plea of guilty as charged to possession of cocaine with the intent to distribute on December 2, 1997. At the multiple bill hearing, the State introduced certified documents from each of these cases. S-2, case number 97-0241, consisted of a bill of information, a set of fingerprints, an executed waiver of rights form, and a minute entry, all bearing the date April 15, 1997 and the defendant’s name. The waiver form is also signed by Karma Landfair, defense counsel, and the trial judge. The minute entry reflects that the defendant was present with counsel, that the court advised him of his rights, and that a waiver of rights form was executed and filed into the record. All of the documents except the fingerprints bear the case number 97-0241.
 

 Similarly, S-3, consisting of documents from case number 95-4684, and S-4, consisting of documents from case number 97-6166, reflect the defendant’s name on each document, including an executed “waiver of rights form” for each case; minute entries reflecting the presence of defendant and counsel and the execution and filing of waiver of rights forms and guilty pleas to possession of cocaine with the intent to distribute. All of the documents in the packets marked S-3 and S-4 reflect the dates of the guilty pleas, September 13,1995 and December 2, 1997, respectively-
 

 It is clear from the record that the State provided copies of the evidence of the prior guilty pleas in ample time for the defense to file written objections. The only written objection pertained to the sequencing of the prior arrests and convictions, which is discussed
 
 infra,
 
 and not to the validity of the prior pleas. Nonobjection or argument as to the sufficiency of the evidence to prove the defendant’s identity as the person previously convicted in case numbers 97-0241, 95-4684, and 97-6166 was made at the hearing. Accordingly, we find that the appellant did not preserve these issues for appellate review. See
 
 State v. Randall,
 
 2010-0027 (La.App. 4 Cir. 10/27/10), 51 So.3d 799, in which this Court refused to consider whether the State provided sufficient evidence of the discharge date from the prior convictions because the issue had not been preserved for appellate review, despite the filing of a formal motion to quash.
 

 In the instant case, subsequent defense counsel then filed another motion to quash the multiple bill and a motion for discovery. In these pleadings, the defendant complained that the State had not turned over copies of its documentary evidence, including proof of the discharge date, and that the lapse of time since the filing of the multiple bill violated the defendant’s right to a speedy trial. After the filing of these pleadings, but prior to the hearing, the State gave the defense counsel copies of the certified documents from the prior convictions which it intended to introduce at the multiple bill hearing. On the date of the hearing, defense counsel stated on
 
 *1069
 
 the record that he was prepared to go forward and indicated he had received the discovery requested; no new written objections were filed. At the hearing, the only defense objections were to the State’s failure to formally file its evidence prior to resting its case and to the adjudication itself on the grounds that the defendant had been denied the right to a speedy trial, including that the defendant had by then been released from prison on the original sentence.
 

 In concluding that appellate review was precluded, this Court stated that the review of the record “establishes clearly that trial counsel made certain specific objections at the multiple bill hearing but elected to make none as to the alleged 112lack of proof of a discharge date. The lack of objection on this issue precludes review on appeal.”
 
 Randall,
 
 p. 11, 51 So.3d at 806. See also
 
 State v. Juengain,
 
 2009-0425 (La. App. 4 Cir. 1/20/10), 41 So.3d 499, 506-07.
 

 Sequencing of Convictions
 

 As argued by defense counsel in the trial court, the appellant argues that his prior convictions did not occur in the proper chronological sequence of offense and conviction, then a subsequent offense and conviction, and so forth, such that he could be adjudicated a fourth offender.
 

 The State’s exhibits from the multiple bill hearing show that the defendant committed the first offense on June 8, 1995. It was charged under case number 97-6166, and the defendant pled guilty on December 2, 1997. The defendant committed the second offense on August 22, 1995; it was charged under case number 95-4684, and the defendant pled guilty on September 13, 1995. He committed the third offense on September 25, 1996; it was charged under case number 97-0241, and the defendant entered his guilty plea on April 15, 1997. Thus, according to the State’s exhibits, the defendant’s guilty plea to the earliest of the three offenses was entered on December 2,1997, after he had committed his other crimes and pled guilty to them. Appellant argues that La. R.S. 15:529.1 requires a defendant to have been convicted of an offense before he commits the next offense in order to be adjudicated a habitual offender. The reason for this sequential requirement, according to the appellant, is that the purpose behind La. R.S. 15:529.1 is to deter recidivism, and not to follow a strict sequencing requirement does not serve that purpose.
 

 The Habitual Offender Law, La. R.S. 15:529.1, provides in pertinent part:
 

 |1SA. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
 

 [[Image here]]
 

 B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section.
 

 For many years, La. R.S. 15:529.1 had been interpreted by the Louisiana Supreme Court to include a sequencing requirement which was described as follows: “The sequence necessary for enhancement
 
 *1070
 
 of sentencing under the Habitual Offender Law is commission of crime, or crimes, followed by conviction (equals a first offender), then commission of another crime, or crimes, followed by conviction (equals a second offender), and so forth.”
 
 State ex rel. Mims v. Butler,
 
 601 So.2d 649, 651 n. 4 (La.1992). This interpretation was overruled by the Louisiana Supreme Court in
 
 State v. Johnson,
 
 2003-2993 (La.10/19/04), 884 So.2d 568. In
 
 Johnson,
 
 two of the defendant’s prior three convictions were entered on the same day, and the court was directly presented with the issue of whether to continue to interpret La. R.S. 15:529.1 B as incorporating a sequential requirement for enhanced penalties in the sentencing of multiple offenders. The court found that Act 688 of 1982 removed the sequential requirement of La. R.S. 15:529.1 and legislatively repudiated the rule of law the court had pronounced in
 
 State ex rel. Jackson v. Henderson,
 
 283 So.2d 210 (La.1973). In overruling its contrary decision in
 
 Mims,
 
 the court held that the only “sequencing” requirement in La. | UR.S. 15:529.1 is that “the subsequent felony must be committed after the predicate conviction or convictions.”
 
 Johnson,
 
 2003-2993, p. 18, 884 So.2d at 578.
 

 Appellant attempts to distinguish
 
 Johnson,
 
 noting that in response to its holding, the legislature by Acts 2005, No. 218, § 1, amended La. R.S. 15:529.1 to add the second sentence of Paragraph B: “Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section.” (October 19, 2004 is the date of the
 
 Johnson
 
 decision.) The appellant argues that, because all three of his predicate convictions occurred prior to October 19, 2004, the
 
 pre-Johnson
 
 sequencing rule applies.
 

 Appellant’s argument is without merit. First, there is nothing in the added text to indicate that the legislature was attempting to reinstate a strict offense, conviction, offense, conviction sequencing requirement. If that was the goal, the legislature could simply have added back the language which existed from 1956 until the 1982 amendment to La. R.S. 15:529.1, the removal of which resulted in the Supreme Court in
 
 Mims
 
 inserting a jurisprudential requirement in place of the clear statutory one. As the court explained in
 
 Mims:
 

 [T]he Legislature by Act 312 of 1956 engrafted a paragraph onto § 529.1 which contained the pre-1982 version of B. The new paragraph (Section B) of Act 312 of 1956 contained two sentences. The first sentence provided:
 

 It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as, and adjudged to be, a third offender, or that an offender have been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
 

 This sentence clarifies, one might say, favorably to the prosecutor, that, in order to be charged as a multiple offender, a felon need not have been so labeled, and so adjudged, previously.
 

 |1fiThe second sentence stated:
 

 Provided, however, that the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction; that one shall be deemed a third offender under this Section only if the crime resulting in the third conviction shall have been committed after his conviction for a crime which in fact caused him to be a second offender in the prior instance; and that one shall be
 
 *1071
 
 deemed to be a fourth offender under this Section only if the crime resulting in the fourth conviction shall have been committed after his conviction for a crime which in fact caused him to be a third offender,
 
 whether or not he was adjudged to be a third offender in the prior instance,
 
 (emphasis added)
 

 The jurisprudence interpreting this statute in the interim between 1956 and the 1982 amendment consistently held that under the Habitual Offender Law, second offender status could only result from an offense committed after a first conviction, and third offender status after a conviction which would have qualified as a second offender conviction, and so on. [Citations omitted.]
 

 [[Image here]]
 

 In Act 688 of 1982, the Legislature amended the habitual offender statute. They made only some minor changes, while repealing the second sentence of
 

 State ex rel. Mims v. Butler,
 
 601 So.2d at 652-58.
 

 It is more probable that the legislature’s decision in 2005 to add the second sentence to Paragraph B, by which the legislature limited the retroactive effect of the
 
 Johnson
 
 decision to predicate convictions entered on the same day after
 
 Johnson
 
 was rendered, was motivated by concern that to do otherwise would result in successful attacks on prior guilty plea bargains. See
 
 Mims,
 
 601 So.2d at 658, n. 6. Those considerations are not applicable to the defendant as he entered each of his guilty pleas on separate dates. In fact, one was entered two years before the others. There is nothing to [ 1ñsuggest that he entered his guilty pleas under the belief that they could not all be used to support a future multiple offender adjudication. Furthermore, in case number 97-6166, the last predicate case in which the defendant pled guilty, the waiver of rights form and the minute entry show that the State agreed not to file a multiple bill. This agreement suggests that the defendant was well aware by then of the possibility at least that he had earlier convictions which would make him eligible for an adjudication as a habitual offender.
 

 On its face, the 2005 amendment to La. R.S. 15:529.1 does not apply to the predicate convictions used to prove that the appellant is a fourth offender. Those convictions were not entered on the same day, and the instant offense was committed after his three prior separate convictions for possession of cocaine with intent to distribute. This assignment of error lacks merit.
 

 ASSIGNMENT OF ERROR NO. 2
 

 In his second assignment of error, appellant asserts that his life sentence is excessive. Specifically, he argues that the trial court abused its discretion when it sentenced him to the life sentence mandated by La. R.S. 15:529.1 without any inquiry as to whether the sentence was excessive under the facts of the case and the defendant’s history of drug offenses, as required by
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993).
 

 The initial issue to be addressed is whether this claim was preserved for review. The sentencing transcript reflects that after the court found the defendant to be a fourth offender and imposed the sentence, defense counsel simply noted his objection without specifying that he was objecting to the [17sentence as excessive. No motion to reconsider the sentence was filed. However, prior to the court imposing sentence, defense counsel argued that the trial court should not impose the mandatory life sentence because the defendant’s prior convictions were not crimes of violence.
 

 
 *1072
 
 This court has found that a simple objection lodged after sentencing was sufficient to preserve the bare claim of constitutional excessiveness.
 
 State v. Miller,
 
 2000-0218 (La.App. 4 Cir. 7/25/01), 792 So.2d 104;
 
 State v. Thompson,
 
 98-0988 (La.App. 4 Cir. 1/26/00), 752 So.2d 293.
 

 In light of defense counsel’s specific argument to the trial court prior to sentencing, and the court’s acknowledgement of counsel’s argument, which is further discussed
 
 infra,
 
 we find that the issue was preserved for review.
 

 The standard for review of a claim that a mandatory sentence imposed under La. R.S. 15:529.1 is excessive is well-settled and was set forth recently in
 
 State v. Phillips,
 
 2010-0582 (La.App. 4 Cir. 2/17/11), 61 So.3d 130:
 

 In
 
 State v. Rice,
 
 2001-0215, p. 5-6, (La.App. 4 Cir. 1/16/02), 807 So.2d 350, 354, this court reviewed the nature of the habitual felony offender sentencing scheme and the standard for departing from it:
 

 Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.
 
 State v. Johnson,
 
 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677;
 
 State v. Dorthey,
 
 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional.
 
 Johnson,
 
 97-1906, pp. 5-6, 709 So.2d at 675;
 
 see also State v. Young,
 
 94-1636, p. 5 (La.App. 4 |18Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality.
 
 State v. Francis,
 
 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 
 State v. Lindsey,
 
 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343;
 
 Johnson,
 
 97-1906, p. 8, 709 So.2d at 677. “Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.”
 
 Id.
 

 Phillips,
 
 2010-0582, pp. 6-7, 61 So.3d at 134-135.
 

 Defense counsel urged the trial court to use its discretion under
 
 Dorthey
 
 to impose a sentence less that the mandatory one of life imprisonment because the defendant’s prior convictions were “only drug charges” and not crimes of violence. The court refused to do so, stating:
 

 Mr. Landfair, in light of your criminal history and what the jury found you guilty of, I do not find that this case is worthy of me going below the life mandatory sentence. I don’t find that he is a candidate for me to go below a life sentence pursuant to Dorthey. I have considered your arguments, Mr. Pryor, and I’m sentencing your client to life imprisonment....
 

 Although the State originally charged the defendant with armed robbery, a violation of La. R.S. 14:64, the jury returned a
 
 *1073
 
 verdict of guilty of first degree robbery, a violation of La. R.S. 14:64.1, and a crime of violence pursuant to La. R.S. 14:2(B)(22). As to the criminal history considered by the trial court, at the multiple bill hearing the fingerprint expert matched the defendant’s fingerprints with those on the certified documents from all five of the defendant’s prior felony 119convictions, not just the three alleged in the multiple bill of information.
 
 [2]
 
 The court had the opportunity therefore to learn the nature of all of the defendant’s prior felony convictions.
 
 [3]
 

 Appellant contends that the life sentence is excessive because his “record of repeat drug convictions proves his substance abuse problem.” In further support of this argument, he cites to cases wherein mandatory sentences were found to be constitutionally excessive because the defendants were drug addicts. However, in those cases, the convictions that led to life sentences were for distribution of small amounts of cocaine in support of their addiction, and there were no crimes of violence in the defendants’ criminal records. See
 
 State v. Burns,
 
 97-1533 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, and
 
 State v. Stevenson,
 
 99-2824 (La.App. 4 Cir. 3/15/00), 757 So.2d 872. Also, in the
 
 Dor-they
 
 case itself, a twenty-year mandatory minimum sentence was ruled potentially excessive given that the defendant was a twenty-seven year old crack addict with three prior convictions for simple possession of cocaine.
 

 There are multiple flaws in the appellant’s argument that his circumstances are the same as those of the defendants in
 
 Burns, Stevenson,
 
 and
 
 Dorthey.
 
 First, his three prior convictions were not for simple possession of cocaine, which would be consistent with a drug addiction. Rather, they were all for possession with the intent to distribute. In fact, during his trial testimony, he stated that he was not a drug addict when asked if he had a “cocaine use problem,” but rather he stated | ^instead that he had been “a dealer.” In his brief, defendant asserts that he was cooperative and remorseful, blaming the crime on his addiction. However, this was not manifested at the time of his arrest and confession. He fails to acknowledge that he was not remorseful at trial, instead claiming that the police forced him into making the confession. He denied committing the offense or that he was a drug addict, claiming instead that the money found in his possession was won at the casino.
 

 Furthermore, the instant conviction for first degree robbery is a crime of violence. La. R.S. 14:64.1, 14:2(B)(22). Thus, the appellant’s assertion that he “has not been involved with weapons or violent offenses” is not accurate.
 

 Notably, the defendant committed his offense after the effective date of the 2001 amendment reducing the mandatory minimum sentence for habitual offenders.
 
 [4]
 
 Thus, even after the legislature decided to reduce sentences for a variety of offenses and offenders by passing Acts 2001, No. 403, a life sentence was still the minimum that could be imposed on the defendant
 
 *1074
 
 under La. R.S. 15:529.1(A)(4)(b). The instant conviction is for a crime of violence and all three of his prior felony convictions were violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more. See La. R.S. 40:967(B). Moreover, pursuant to La. R.S. 15:529.1(A)(3)(b), even if the defendant had only been convicted of two prior violations of La. R.S. 40:967(A) relative to possession of cocaine with the intent to distribute, the legislature had still determined that a mandatory life sentence would be appropriate.
 

 ^Despite his attempt to present mitigating factors, the record fails to provide evidence that there were exceptional circumstances that would justify a downward departure from the mandatory term of life imprisonment. See
 
 State v. Williams,
 
 2005-0176 (La.App. 4 Cir. 5/3/06), 932 So.2d 693. This assignment of error has no merit.
 

 CONCLUSION
 

 Accordingly, for the foregoing reasons, the appellant’s conviction and sentence are affirmed.
 

 AFFIRMED
 

 [1]
 

 . The fingerprints taken that date were introduced at the multiple bill hearing as S-l. Officer Pollard testified that he compared the fingerprints which he took from the defendant on March 31, 2010 to each of the set of fingerprints contained in State’s exhibits S-2, S-3, and S-4, and that all were those of the defendant, Karma Landfair.
 

 [2]
 

 . The State earlier had stated that it felt constrained to only charge that the defendant was a fourth offender because the blank multiple bill of information form it used only had spaces to allege that a defendant is a fourth offender.
 

 [3]
 

 . The record does not indicate what the other two convictions were, except that the defendant at trial admitted he had a prior conviction for distribution of cocaine. The predicate convictions in the multiple bill are all for possession of cocaine with the intent to distribute.
 

 [4]
 

 . Burns, Stevenson,
 
 and
 
 Dorthey
 
 preceded the 2001 revisions to the mandatory minimum sentences for multiple offenders.