MAX N. TOBIAS, JR., J.
 

 hOn 9 June 2009, the state charged the defendant, Earl S. Vincent, III (“Vincent”) by bill of information with one count of unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. At his arraignment on 16 June 2009, Vincent pled not guilty. Following a two-day trial, a six-member jury found the defendant guilty of attempted unauthorized use of a motor vehicle. On 16 December 2009, the court adjudged Vincent to be a fourth felony offender and sentenced him to serve 20 years at hard labor. This timely appeal followed.
 

 STATEMENT OF FACT
 

 On 27 April 2009, Officer John Blatcher and then police recruit and now police officer, Matthew Henderson, responded to a call relating to a, stolen vehicle. They met the victim at the intersection of St. Claude Avenue and Lizardi Street in New Orleans, and learned that while the victim was making a delivery, his delivery van was stolen. A short while later, as Officer Blatcher was questioning the victim, the victim noticed his van parked across the street from its original parking place. Officer Blatcher and Officer Henderson drove their vehicle over to the parked van. As they approached the van, Vincent jumped from the van and fled on St. Claude Avenue, but not before Officer Blatcher got a good look at him. Officer RHenderson broadcast the suspect’s flight and the fact that the suspect was clothed in black and wearing a blue and orange baseball cap. As Vincent fled through the neighborhood, he lost his cap in a yard on Egania Street. Officer Blatcher identified in court the cap, jeans, and shirt that Vincent wore on the day of incident. The clothing was subsequently logged into Central Evidence and Property by Officers Henderson and Blatcher. Although Officer Blatcher did not apprehend Vincent, he positively identified the defendant at a show up as the man he saw flee the van.
 

 Officer Henderson testified and corroborated Officer Blatcher’s recounting of facts regarding the report of a stolen vehicle. Officer Henderson said he got a look at the defendant as he fled the van. He gave chase but lost sight of Vincent when Vincent jumped the gate of a nearby house.
 
 *411
 
 However, by that time Detective Sinegar and Officers Seibert and Lee had joined the pursuit. Officer Henderson saw the defendant after he was apprehended. He said that the defendant was wearing a white t-shirt and black pants.
 

 Officer Terrell Seibert testified that he assisted in investigating the case. On the day of the incident he relocated to the area of Lizardi Street and St. Claude Avenue where he spoke with Officer Henderson, who advised that the suspect may be in the 1000 block of Lizardi. As he and his partner drove in the area, they were flagged down by an Entergy employee, who told them that the suspect was in the area. Upon further investigation, Officer Seibert located the shirtless suspect sitting on the front porch of 1025 Lizardi Street. Officer Seibert ordered the suspect from the porch and notified other units that he had a suspect who might be the person being sought. The other police units relocated to Officer Seibert’s location and received a positive identification on him from Detective Sinegar, who ] ¡¡had pursued the defendant on foot. At that point, Officer Sei-bert took Vincent into custody. Officer Seibert identified Vincent in court as the person he took into custody.
 

 Detective Mark Sinegar testified that he received a call from Officers Blatcher and Henderson by police radio informing him of a complaint of a stolen vehicle at Lizardi Street and St. Claude Avenue. While Detective Sinegar and the other officers were speaking to the victim at the location, the victim noticed his van across the street. Detective Sinegar watched the victim approach his van and heard him yell something at someone in the van. At that point, Vincent exited the driver’s side of the van and fled. Officer Henderson chased the defendant on foot while Detective Sinegar followed in his unmarked unit. The pursuit took the officers to Egania Street and a neighborhood yard. Vincent ran from an empty lot near the middle of the block, stumbled, and lost his cap. Detective Sinegar exited his vehicle and chased the defendant until the defendant jumped a wooden fence. Detective Sine-gar lost sight of Vincent but radioed a description — black male, wearing all black clothing — to other units in the area. As the lead detective on the case, Detective Sinegar observed the scene and he identified in court the pictures taken of thereat. Once officers detained Vincent, Detective Sinegar positively identified Vincent as the man he pursued on foot. Detective Sine-gar also made an in court identification of the defendant.
 

 Larry Class, the victim, testified that he worked two jobs, one of which was delivering Krispy Kreme donuts in a Chevrolet Astro van. On 27 April 2009, while in the service center on St. Claude Avenue, someone drove off with his van. He had been required to leave his van running to prevent the sugar on the donuts from running. When he realized his van was missing, Mr. Class called 911. As [4Mr. Class spoke with investigating officers, he noticed his van parked across the street from the service center. He approached the van and noticed a man seated in the driver’s seat. He reached into the van and turned off the ignition. At that point, the suspect jumped from the van and ran. Mr. Class identified Vincent in court as the man he saw seated in his van. He further verified that he did not give Vincent permission to be in his van.
 

 Ms. Gesielle Roussell, Assistant Commander of the New Orleans Police Department Communications Division, testified that she supervises the 911 operations dispatchers. Ms. Roussell explained that when a 911 call comes in, the dispatcher gets the location of the incident, the caller’s name, and other pertinent information.
 
 *412
 
 She identified for the court the incident from this case. The tape of the 911 call was played for the jury.
 

 Officer Gerald Lee testified that at the time the call concerning this incident came in, he was riding with his partner, Officer Seibert. When they arrived at the Lizardi Street and St. Claude Avenue scene, they set up a perimeter across the street from a gas station. After speaking with an En-tergy workman near the scene, the officers went to 1025 Lizardi Street where they found the defendant seated on a porch. Vincent told the officers that he lived at the house, but the officers learned from the resident of the property that he did not live at that address.
 

 Ms. Jean Anderson, the owner of the property located at 1025 Lizardi Street, testified for the defense and stated that on 27 April 2009 she heard noise outside of her house. When she went outside, she saw that the police had the defendant handcuffed in the driveway. She asked what was going on, but the police told her to shut up and to stand aside. She further testified that Vincent was her second cousin and that he had come to her house at her request that day to do some chores |sfor her. Ms. Anderson stated that Vincent had raked leaves at her house the morning of the incident. On cross examination, Ms. Anderson admitted that she could not say for certain where the defendant was on that morning or if he raked the leaves.
 

 ERRORS PATENT
 

 An examination for errors patent on the face of the record reveals one. On 16 December 2009, Vincent filed a motion for new trial, which the trial court denied. That same day, the defendant was sentenced as a quadruple offender. La. C.Cr.P. art. 873 states that if a motion for new trial or motion in arrest of judgment is filed, the sentence shall not be imposed until at least 24 hours after the motion is denied, unless the defendant expressly waives the delay or pleads guilty. Vincent did not waive the delay.
 

 Failure of the trial court to observe the mandatory 24-hour delay after denial of a motion for new trial, where such delay is not waived, requires the sentence to be vacated and the case remanded for resen-tencing.
 
 State v. Augustine,
 
 555 So.2d 1331, 1333 (La.1990),
 
 superseded, in part, by statute
 
 in
 
 State v. Martin,
 
 93-1915, pp. 2-3 (La.App. 4 Cir. 9/29/94), 643 So.2d 830, 832. However, Louisiana jurisprudence has recognized exceptions to this requirement in cases where the failure to observe the delay is considered harmless. For example, the Louisiana Supreme Court in
 
 State v. Seals,
 
 95-0305 (La.11/25/96), 684 So.2d 368, held that the failure of the trial court to observe the mandatory 24-hour rule was harmless where the sentence imposed was mandatory in nature.
 
 Id.
 
 at p. 17, 684 So.2d at 380. In the case at bar, because Vincent’s sentence of 20 years is a mandatory | (¡sentence under La. R.S. 15:529.1, the trial court’s failure to observe the statutory delay is considered harmless error.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In his first assignment of error, Vincent argues that the trial court erred in not declaring a mistrial when the prosecutor improperly interjected race into his closing argument.
 

 At the outset, we noted that defense counsel objected to the prosecutor’s remarks but did not request a mistrial. Therefore, the issue has not been preserved for appeal. La.C.Cr.P. art. 841 A;
 
 State v. Camper,
 
 08-0314 (La.App. 4 Cir. 10/1/08), 996 So.2d 571. Nevertheless, even if the issue were properly before this
 
 *413
 
 court on appeal, the assignment has no merit.
 

 A mistrial is a drastic remedy, warranted only when an error at trial results in substantial prejudice and effectively deprives a defendant of a fair trial.
 
 State v. Edwards,
 
 420 So.2d 668, 679 (La.1982). “The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.”
 
 State v. Jones,
 
 03-0829, p. 19 (La.App. 4 Cir. 12/15/04), 891 So.2d 760, 774 (citing
 
 State v. Wessinger,
 
 98-1234, p. 24 (La.5/28/99), 736 So.2d 162,183).
 

 La.C.Cr.P. art. 774 limits the scope of the argument to evidence, the lack of evidence, and conclusions that may be drawn there from. It specifically warns that “[t]he argument shall not appeal to prejudice.” Additionally, La.C.Cr.P. art. 775 provides for a mistrial in a jury case when prejudicial conduct makes it impossible for the defendant to obtain a fair trial. Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics. 17
 
 See, e.g., State v. Martin,
 
 539 So.2d 1235, 1240 (La.1989);
 
 State v. Copeland,
 
 530 So.2d 526, 545 (La.1988). Even assuming that remarks were inappropriate, a conviction will not be reversed due to an improper remark during closing argument unless the court is thoroughly convinced that the remark influenced the jury and contributed to the verdict, for much credit should be accorded to the good sense and fair-mindedness of jurors who have seen the evidence and heard the arguments, and have been instructed by the trial judge that arguments of counsel are not evidence.
 
 State v. Kyles,
 
 513 So.2d 265, 275-76 (La.1987).
 

 During closing argument, defense counsel told the jury, “But the officers, they stopped the first black man who had on black jeans that they saw.” In direct response to that assertion, the prosecutor, during rebuttal closing argument, stated:
 

 You know one of the things that puzzles me — and quite frankly, bothers me a great deal — is when people stand in this court of law, and the very first thing they do is throw out the race issue ...
 

 ... it puzzles me because you’ve had numerous people come into this court building — and you’ve heard numerous different testimony from police officers. And I think 90 percent of the police officers that you heard were African American.
 

 [[Image here]]
 

 The fact that [the defendant is] an African American man is of no moment. Because if it had been someone of the Caucasian race, they would be sitting in that same exact seat.
 

 So let’s take race out of the question, because that seems to be the common trend now. Everything is based on race; and it is not.
 

 As the record indicates, the prosecutor did not raise the issue of race. The prosecutor recognized that the defense made race an issue and merely took the opportunity to point out to the jury that Vincent’s ethnicity was “of no moment.” We find no indication that the prosecutor had the intent to pursue the race issue in order to prejudice the jury against the defendant. See
 
 State v. Martin,
 
 93-0285 (La.10/17/94), 645 So.2d 190.
 

 | SM oreo ver, the prosecutor was responding to the argument made by defense counsel. La.C.Cr.P. art. 774 provides: “The state’s rebuttal shall be confined to answering the argument of the defendant.” The state was simply addressing the de
 
 *414
 
 fense’s assertion concerning race. The mere reference to one’s race does not require the granting of a mistrial; race maybe a reasonable method of identification and, thus, material and relevant.
 
 State v. Jenkins,
 
 340 So.2d 157, 178 (La.1976). It depends on the facts and circumstances present in each individual case. To require a mistrial the remark must be immaterial and irrelevant and must be such that it might create prejudice against the defendant in the mind of the jury.
 
 Id.
 
 We find nothing improper about the prosecutor’s statement in the context of this case. This assignment of error is without merit.
 

 ASSIGNMENT OF ERROR 2
 

 In this second assignment of error Vincent argues that: (1) there is no multiple bill in the record; (2) his multiple offender adjudication must be vacated because he was not charged as such by a bill of indictment or afforded a jury trial on his adjudication as a quadruple offender; and (3) the state failed to prove his identity during the multiple bill hearing.
 

 As to first assertion, no bill of information is in the record on appeal; however, this does not mean that a multiple bill was not filed. The transcripts show that the multiple bill proceeding was heard on 16 December 2009, and conducted pursuant to a valid multiple bill of information.
 

 In
 
 State v. Burks,
 
 02-1939, p. 2 (La.App. 4 Cir. 3/19/03), 843 So.2d 444, 446, this court upheld a sentence imposed pursuant to a habitual offender statute even when no multiple bill of information appeared in the record on appeal. The
 
 Burks
 
 court cited
 
 State v. Uqdah,
 
 613 So.2d 1113 (La.App. 5 Cir.1993), noting |sthat the Fifth Circuit considered a case wherein the multiple bill was missing from the record, and that court held that the prior conviction could not be used to enhance the defendant’s sentence and remanded the case for resentencing. The
 
 Burks
 
 court said that the Fifth Circuit noted that
 
 Uqdah,
 
 unlike
 
 Burks
 
 and the case before it, was silent as to whether there was any indication in the record that a multiple bill was filed, and on that point
 
 Uqdah
 
 can be distinguished from
 
 Burks,
 
 and by extension, this case. In
 
 Burks,
 
 considering the minute entry referenced a multiple bill, and, in the case at bar, the transcript indicates that a multiple bill hearing was held, coupled with the fact that neither the defendant in
 
 Burks
 
 nor the defendant in the case before us objected prior to appeal that a written multiple bill had not been filed, we can assume that the multiple bill was filed herein.
 

 Additionally, the purpose of a multiple bill of information is to give notice to the defendant. Vincent had notice that the state intended to multiple bill him as a fourth felony offender from the motion hearing and at the close of trial when the judge remanded him prior to sentencing. Moreover, Vincent concedes in his brief that he was aware the state was charging him as a quadruple offender. Just as important, Vincent failed to object to the multiple bill proceedings and fails to show any prejudice.
 

 With regard to Vincent’s claim pertaining to not being indicted as a multiple offender, the Louisiana Constitution of 1974 does not require that the District Attorney institute proceedings by a bill of indictment where the maximum penalty for the charge is less than life imprisonment. The constitution mandates that prosecution of felonies be initiated by indictment or information applies only to the substantive crime for which the accused is charged. La. Const. 1974, art. I, § 15; La.C.Cr.P. art. 382. In
 
 State v. Alexander,
 
 325 So.2d 777, 779 (La.1976), quoting
 
 State v. Jackson,
 
 298 So.2d 777 (La.1974), the Court reasoned that the “(bill of) information [charging the defendant as a
 
 *415
 
 multiple offender] does not charge a crime but is merely the method of informing the sentencing court of the circumstances and requesting an enhancement of penalty.” Thus, the enhanced penalty proceeding does not charge the defendant with a crime; consequently no indictment is necessary.
 
 Id.
 
 Moreover, the charging instrument is dependent upon the classification of the substantive crime charged, not the enhanced penalty to which an individual may be subject upon conviction.
 
 Id.
 
 In
 
 State v. Tassin,
 
 08-0752, p. 9 (La.App. 3 Cir. 11/5/08), 998 So.2d 278, 285,
 
 writ denied
 
 08-2909 (La.9/18/09), 17 So.3d 385, the defendant asserted that the
 
 State v. Alexander
 
 needed to be reconsidered in light of
 
 U.S. v. Booker,
 
 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The court reasoned that
 
 Booker
 
 was not applicable because it did not address a recidivism statute.
 
 Id.
 
 at 238, 125 S.Ct. 738. Thus, the
 
 Tassin
 
 court concluded that
 
 State v. Alexander
 
 was still “good law.”
 

 Vincent was charged with unauthorized use of an automobile, the penalty for which is not life imprisonment. According to the jurisprudence, the proceedings were properly initiated by bill of information. This claim of error is without merit.
 

 Next, Vincent argues that he was entitled to a jury trial on the issue of his multiple offender status. He suggests that the multiple offender statute violates the Fourteenth and the Sixth Amendments to the U.S. Constitution. He relies upon the United States Supreme Court cases
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999);
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000);
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 408 (2004).
 

 This court has determined that no constitutional right to a jury trial exists in multiple bill proceedings because all of the elements necessary to enhance the | n sentence “can be determined by reviewing the documents submitted in support of the multiple bill of information.”
 
 State v. Smith,
 
 05-0375 pp. 3-5, (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 839, citing
 
 Appren-di, supra.
 
 We find no merit to this claim.
 

 Addressing the defendant’s claim that the state failed to prove his identity at the multiple bill hearing, we likewise find the claim to be without merit.
 

 Vincent asserts that the state failed to prove that he was the same Earl Vincent who pleaded guilty in 2002 to possession of stolen property. He argues that the arrest register, which contains his fingerprints, was not sufficiently linked to the conviction documents. In essence, he argues that although he was the Earl Vincent arrested for the crime, he was not the Earl Vincent who pleaded guilty to the crime.
 

 To obtain a multiple offender conviction, the state is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony.
 
 State v. Hawthorne,
 
 580 So.2d 1131 (La.App. 4th Cir.1991). Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver’s license number, sex, race, and date of birth.
 
 State v. Westbrook,
 
 392 So.2d 1043 (La.1980). The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity.
 
 *416
 

 State v. Curtis,
 
 338 So.2d 662 (La.1976). In
 
 Westbrook,
 
 the Court found that along with the defendant’s name, his driver’s license number, sex, race, and date of birth were sufficient evidence for | ^the state to carry its burden of proving that the defendant then before the court was the same person previously convicted of another felony.
 

 To support its charge that Vincent had a 2002 conviction for possession of stolen property, the state introduced the following evidence: the defendant’s fingerprints taken in court on the day of the multiple bill hearing (State’s Exhibit S-l), a certified copy of a fingerprint card (State’s Exhibit S-4), and a certified package (State’s Exhibit S-5) containing the following certified documents from criminal district court case number 434-123 in which Earl Vincent pleaded guilty to possession of stolen property and criminal damage: (1) the bill of information; (2) the waiver of constitutional rights plea of guilty form signed by Earl Vincent; (3) the docket master; (4) the minute entry of 24 October 2002 referencing the guilty plea; (5) two screening action forms accepting charge of possession of stolen property valued at more than $500.00 and simple criminal damage to property; and (6) two arrest registers.
 

 Officer Joseph Pollard, an expert fingerprint examiner, testified that the fingerprints on State’s Exhibit S-l matched the fingerprints on State’s Exhibit S-4. He further testified that the following information contained in State’s Exhibit S-4 matched the information contained in State’s Exhibit S-5: the defendant’s birth date, the SID (folder) number, and the social security number. He further testified that folder numbers are never duplicated. He concluded that Vincent was the same person who pled guilty in 2002 to possession of stolen property by comparing defendant’s fingerprints in State’s Exhibit S-l to the fingerprints in State’s Exhibit S-4 to the unique information contained within State’s Exhibit S-5.
 

 At the conclusion of Officer Pollard’s testimony, the trial judge stated: “... there is no doubt whatsoever, in my mind, as there was no doubt with Officer 11sPollard, that [Vincent] is one and the same person with a prior conviction under Case No. 434-123. He’s the same person with the prior conviction under Case No. 434-123.”
 

 In
 
 State v. Henry,
 
 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, this court concluded that the state presented sufficient proof of identify at the habitual offender hearing, wherein the defendant conceded his identity to two prior convictions, but not as to the third for which the state had no arrest register. In place of the fingerprinted arrest register the state introduced a certified copy of the conviction, which bore the same Bureau of Identification Number of the defendant, the same physical description, same birth date, and same social security number as the other conviction documents.
 

 In this case, as in the
 
 Henry
 
 case, the trial court found that the unique folder number, date of birth, and social security number were sufficient to establish that Vincent was the same defendant who pled guilty to possession of stolen property in 2002. Based upon the totality of the evidence submitted, the state proved that the defendant was the same Earl Vincent who pled guilty in 2002. We find that this assignment has no merit.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 In a final assignment of error, the defendant contends that his sentence is excessive. He also argues that the trial court failed to articulate the factual basis for his sentence,
 
 i.e.,
 
 the sentencing factors enumerated in La.C.Cr.P. art. 894.1.
 

 Vincent was adjudged a quadruple offender and as such was subject to a sen
 
 *417
 
 tencing range of twenty years to life imprisonment. La. R.S. 15:529.1 A(l)(c)(i). The sentence imposed in this case is the minimum allowed by statute.
 

 114The Legislature enacted the Habitual Offender Law pursuant to its sole authority under La. Const, art. Ill, § 1 to define conduct as criminal and to provide penalties for such conduct.
 
 State v. Dorthey,
 
 628 So.2d 1276, 1280 (La.1993). The Louisiana Supreme Court has repeatedly held that the statute is constitutional and therefore, the minimum sentences the statute imposes upon multiple offenders are presumed to be constitutional, and should be accorded great deference by the judiciary.
 
 Id.
 
 However, courts have the power to declare a sentence excessive under La. Const, art. I, Section 20 even though it falls within the statutory limits provided by the Legislature.
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979).
 

 The Court in
 
 Dorthey,
 
 relying in part on La. Const, art. I, § 20 (“No law shall subject any person ... to cruel, excessive or unusual punishment.”), emphasized the judiciary’s constitutional duty to review sentences for excessiveness:
 

 ... [W]e recognize that the review of sentencing, including sentencing under R.S. 15:529.1, is a long established function of the judicial branch. Accordingly, Louisiana’s judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness.
 
 State v. Sepulvado,
 
 367 So.2d 762 (La.1979). According to
 
 Sepulvado,
 
 the 1974 Louisiana Constitution, Article I, Section 20 “‘gives the courts, in the exercise of their judicial power, a basis for determining that sentences, whether fine, imprisonment or otherwise, though not cruel and unusual, are too severe as punishment for certain conduct and thus unconstitutional. It is a basis for extending the court’s control over the entire sentencing process.’ ”
 
 Id.
 
 at 766, citing “The Declaration of Rights of the Louisiana Constitution of 1974”, 35 La. L.Rev. 1, 63 (1974). Thus, “[t]he imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment ...”
 
 Id.
 
 at 767. Accordingly, under the 1974 Constitution “the excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.”
 
 Id.
 
 at 764.
 

 Dorthey, supra
 
 at 1280.
 

 In
 
 State v. Lindsey,
 
 99-3302 (La.10/17/00), 770 So.2d 339, the Court recognized
 
 Dorthe
 
 y limited holding:
 

 We held [in
 
 State v. Johnson,
 
 96-1263 (La.6/28/96), 676 So.2d 552] that “[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular ease before it which would rebut [the] presumption of constitutionality” and emphasized that “departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.”
 
 State v. Johnson, supra
 
 at 676, 677. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
 

 [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 

 Lindsey,
 
 99-3302, p. 4, 770 So.2d at 343.
 

 As the jurisprudence indicates, the burden is on the defendant to present clear and convincing evidence that would justify a downward departure of the mandatory
 
 *418
 
 minimum sentence. Vincent herein pleads his age (twenty-eight) at the time of sentencing and notes that his first two nonviolent offenses occurred two months apart in June and August 2002 and were for “monetary instrument abuse” and possession of stolen property. He notes that he was put on probation for both, but the second violated his probation for the first. He further states that on 24 April 2009, only three days before his arrest on this charge, he pled guilty to possession of cocaine in December 2008, his third offense, and that he did not receive the benefit of treatment provided by probation. The foregoing does not amount to objective and exceptional facts and circumstances warranting a lesser sentence.
 

 11fiMoreover, this circuit and others have upheld twenty year sentences for fourth felony offenders.
 
 See State v. Augillard,
 
 03-0327 (La.App. 4 Cir. 6/4/03), 853 So.2d 17;
 
 State v. Yrle,
 
 05-0202 (La.App. 5 Cir. 10/6/05), 916 So.2d 1197;
 
 State v. Quinn,
 
 09-1382 (La.App. 3 Cir. 5/12/10), 38 So.3d 1102;
 
 State v. Dorsey,
 
 04-1358 (La.App. 1 Cir. 3/24/05), 907 So.2d 154.
 

 As for articulating a factual basis for the sentence, “[w]hen the statute provides for a mandatory sentence, it is an exercise in futility for the trial court to enumerate its reasons for sentencing.”
 
 State v. Jefferson,
 
 04-1960 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, citing
 
 State v. Green,
 
 99-2847, p. 8 (La.App. 4 Cir. 11/29/00), 779 So.2d 835, 840.
 

 This final assignment has no merit.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the conviction and sentence of the defendant, Earl S. Vincent, III.
 

 AFFIRMED.