JOAN BERNARD ARMSTRONG, Chief Judge.

Jstatement OF CASE

On December 17, 2009, the State charged Bruce Sims with one count of *480 attempted second degree murder. Sims pled not guilty at his arraignment on January 11,2010. A twelve-member jury found Sims guilty of attempted manslaughter on April 6, 2010. On June 8, 2010, all of the following occurred: The court denied the defendant’s motion for post-verdict judgment of acquittal and motion for new trial; the State filed a multiple bill alleging that Sims was a third offender, pursuant to which the court found him to be a third offender, and sentenced him to serve life at hard labor without benefit of probation, parole, or suspension of sentence; the trial court granted Sims’ motion for appeal; and Sims filed a motion to reconsider the sentence which is currently set for hearing on September 26, 2011.
Sims’ appeal was lodged in this Court on September 1, 2010. Sims contacted this Court, requesting the record to file a supplemental brief. This Court sent him the record, but he failed to file a brief.
| STATEMENT OF FACT
Mr. Lonnie Stevens testified that on the evening of October 16, 2009, he was at a party with his the girlfriend, Ms. Dawn Mosley, and her family before heading back to Ms. Mosley’s residence on Roche-blave Street in New Orleans. When he and Ms. Mosley arrived at the residence, the defendant was in the area, walked over to Mr. Stevens, and started arguing with him. Mr. Stevens testified that prior to this incident, he and the defendant knew each other and had argued with each other in the past. Mr. Stevens testified that after the defendant began arguing with him, he went inside of the residence to grab his bag with the intention of leaving the area. Mr. Stevens testified that after he grabbed his bag, he started to walk outside of the door of the residence, when the defendant began stabbing him. Mr. Stevens testified that prior to being stabbed, he threw a bottle at the defendant as a result of their argument. Mr. Stevens further testified that he did not realize that he had been stabbed until after “one of the police officers told me: “You bleeding.’ ” Thereafter, Mr. Stevens was taken to the hospital where he was treated for multiple stab wounds.
On cross-examination, Mr. Stevens testified that he “had a few beers” before he began arguing with the defendant. Mr. Stevens testified that he remembered grabbing a bottle after arguing with the defendant, but that he did not remember any other details surrounding the exact time he threw the bottle at the defendant.
On re-direct, Mr. Stevens testified that although he had a few beers on the night in question, he was not drunk when the incident ensued between him and the defendant. Mr. Stevens testified that prior to the incident, the defendant and Ms. | ¡¡Mosley had dated. Mr. Stevens further testified that he did not know the defendant before he started dating Ms. Mosley. Mr. Stevens is no longer dating Ms. Mosley.
Officer Quincy Broaden testified that around 11:40 p.m. on the night in question, he and his partner received a dispatch to 1940 N. Rocheblave St. When they arrived at the scene, they observed Mr. Stevens with several stab wounds to the upper part of his body. Off. Broaden testified that there was one witness on the scene, Ms. Mosley. Off. Broaden further testified that although the defendant was not present at the scene, Mr. Stevens told him that the defendant had stabbed him. Off. Broaden testified that he was able to ascertain that Mr. Stevens and the defendant had gotten into an argument over Ms. Mosley, which later turned physical.
On cross-examination, Off. Broaden testified that although the Crime Lab was notified of the incident, and that although he assumed they took pictures of the *481 scene, he did not know whether they took any samples of the blood at the scene; nor did he know whether the blood at the scene was that of only one person or more.
On re-direct, Off. Broaden identified seven pictures taken at the scene by the Crime Lab on the night in question. Each picture identified blood, either pooled or splattered, in the vicinity of where the altercation ensued between Mr. Stevens and the defendant.
Ms. Dawn Mosley testified that she dated the defendant for five or six months. Ms. Mosley dated Mr. Stevens, on and off, for five years before she met the defendant. Ms. Mosley testified that on the night in question, she was dating the defendant. On that night, Ms. Mosley and Mr. Stevens went to a party together for her godchild. Following the party for Ms. Mosley’s godehild, Ms. Mosley |4planned to take the defendant out for his sixteenth birthday. Ms. Mosley testified that she asked the defendant to be at her house around 11 p.m., and that she and Mr. Stevens returned from the party around 11:30 p.m. or 12:00 a.m. When Ms. Mosley and Mr. Stevens first got to the house, Ms. Mosley ran inside of it to use the restroom. While she was in the restroom, her sister, who had dropped her off at her house, knocked on the restroom door and told her: “There’s a man outside.” Seconds later, Ms. Mosley went outside and saw the defendant. She gave the defendant a hug and a kiss and told him “Happy Birthday.” At this time, Mr. Stevens was inside of the house getting his work bag. Ms. Mosley then went back inside, while Mr. Stevens was going outside. By the time Ms. Mosley was back inside the house, she realized that the two men were fighting.
Ms. Mosley testified that prior to exiting the residence, Mr. Stevens grabbed a bottle that was on her coffee table and, upon leaving the house, threw the bottle at the defendant and said: “Bitch, you not taking my family from me.” Ms. Mosley did not know whether the bottle Mr. Stevens threw at the defendant actually hit the defendant; she only knew that the bottle hit the ground and broke. Ms. Mosley testified that after Mr. Stevens threw the bottle towards the defendant, he “went behind the bottle and ended up on top of him.” The two men then began to fight on the ground.
Ms. Mosley testified that she saw the defendant hitting Mr. Stevens and that she saw a handkerchief around the defendant’s hand, but that she did not see a knife in his hand. Ms. Mosley testified that she pulled Mr. Stevens off of the defendant, while her sister called the police. Ms. Mosley testified that she is no longer dating either Mr. Stevens or the defendant.
|sOn cross-examination, Ms. Mosley testified that the bottle Mr. Stevens grabbed from her coffee table and threw at the defendant was a thirty-two ounce glass bottle that had originally been filled with sunflower seeds. Ms. Mosley testified that after she pulled Mr. Stevens off of the defendant, she saw blood on both men, but did not see injuries to the defendant. Ms. Mosley further testified that Mr. Stevens and the defendant had “passed words, like ... once or twice,” in the past, but never really had any previous conflicts.
Officer Mary Colon testified that on the night in question, at approximately 11:30 p.m., she was dispatched to 1940 N. Roehe-blave St. for an aggravated battery. When she arrived at the scene, she was informed that Mr. Stevens had already been transported to University Hospital by EMS. Off. Colon spoke with Ms. Mosley about the incident and witnessed blood by the door of the residence, as well as on the driveway. Off. Colon testified that she did *482 not see any broken bottles around the scene.
Off. Colon then left the scene and traveled to the hospital to speak with the victim. When she arrived at the hospital, Off. Colon saw that the victim had multiple stab wounds: one was about an inch from his heart, another one was on his left side, and two were on his left rib cage. While Off. Colon was at the hospital, an ultrasound was taken of Mr. Stevens’ heart. The ultrasound revealed that there was fluid around his heart. Through her investigation, Off. Colon learned the identity of the potential perpetrator was the defendant. Off. Colon later presented a six-person photographic lineup to Mr. Stevens; and Mr. Stevens made a positive identification that the defendant was the perpetrator.
On cross-examination, Off. Colon testified that she did not arrest the defendant. She further testified that Ms. Mosley told her that she observed the | (¡defendant punching Mr. Stevens and that he had a pocket knife. Off. Colon further testified that the other subjects who witnessed the altercation were all minors — although there were some adults in the area at the time of the altercation, none apparently saw “the whole commotion.”
On re-direct, Off. Colon testified that throughout the course of her investigation, she did not learn from any witness that a bottle had either been thrown or broken.
The defense rested without calling any witnesses.

ERRORS PATENT

The record reveals no errors patent.

ASSIGNMENT OF ERRORS

Although the defendant argues three assignments of error, a review of the record reveals only one assignment of error. In his sole assignment of error, the defendant argues that the evidence was insufficient to convict him of attempted manslaughter.
This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011, p. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107 as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is 17what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mus-sall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may *483 be inferred according to reason and common experience. State v.Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The defendant was charged with attempted second degree murder and convicted of attempted manslaughter in violation of La. R.S. 14:27 and 14:31.
La.R.S. 14:27 provides in part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
⅝ ⅜ ⅜ ⅜ ⅜ ⅝
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
|sLa.R.S. 14:31 provides in pertinent part:
Manslaughter is: 1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed;
In reviewing whether the evidence supports a trier of fact’s decision to convict, the court should review the evidence in the light most favorable to the prosecution and must determine if a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jarman, 445 So.2d 1184, 1189 (La.1984).
The defendant argues that the evidence was insufficient to convict him of attempted manslaughter because the evidence did not eliminate beyond a reasonable doubt that he did not act in self-defense.
We find nothing in the record to show that the defendant raised the argument that he acted in self-defense in the trial court. An appellate court need not consider a claim of self-defense raised for the first time on appeal. State v. Patterson, 10-415, p. 11 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 148. The defendant did not testify at trial. The record on appeal did not include any opening or closing statements made by either the State or the defense. Additionally, the defendant did not make his self-defense argument in either his motion for new trial or motion for post-verdict judgment of acquittal. In State v. Juluke, 98-0341, p. 4-5 (La.1/8/99), 725 So.2d 1291, 1293, the Louisiana Supreme Court held:
|9The Jackson standard does not provide a defendant with a means of splitting alternative and inconsistent defenses in *484 different forums, raising one defense before the jury and when that fails, a second defense presupposing a different set of facts in an appellate court conducting sufficiency of review under Jackson and La. C. Cr. P. art. 821(E).
However, as in Patterson, supra, we may infer the possibility that the defense was raised in the trial court. Consistent with such an inference, we note that the State has not argued that the defense failed to raise the issue in the trial court. Therefore, as in Patterson, out of an excess of caution, this Court reviewed the record carefully regarding the issue of self-defense from a sufficiency of evidence perspective.
In this regard, as explained in State v. Boudreaux, 08-1504, pp. 28-32 (La.App. 4 Cir. 9/29/10), 48 So.3d 1144, 1160-1162, neither the law nor the jurisprudence provides a definitive answer to the question of whether it is the State or the defendant who bears the burden of proof in a non-homicide case on the issue of self-defense.
However, as in Boudreaux, supra, we find that viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the defendant did not act in self-defense.
Accordingly, we find no merit in this assignment of error.
For the foregoing reasons, the defendant’s conviction is affirmed and the case is remanded for sentencing in light of defendant’s pending motion to reconsider the sentence, reserving to the defendant the right to appeal his sentence.
AFFIRMED IN PART AND REMANDED
MURRAY, J., concurs.