Judge EDWIN A. LOMBARD.
|, The defendant’s conviction for attempted manslaughter has already been affirmed on appeal with the case being remanded for sentencing “in light of pending motion to reconsider the sentence, reserving [the defendant] the right to appeal his sentence.” State v. Sims, 2010-1227, p. 9 (La.App. 4 Cir. 9/23/11), 75 So.3d 478, 484. Accordingly, only sentencing issues raised by the defendant are before us in this appeal. After review of the record in light of the applicable law, we find no error in the adjudication of the defendant as a triple offender but, because the sentencing transcript indicates that the trial court misapprehended his discretionary authority, we vacate his sentence and remand the matter for resentencing.

Relevant Facts and Procedural History

On December 17, 2009, the defendant/appellant Bruce Sims was charged by bill of information with one count of attempted second degree murder in violation of La.Rev.Stat. 14:(27)30.1. On April 6, 2010, the jury returned a responsive | gverdict of guilty of attempted manslaughter and on June 3, 2010, the defendant was sentenced to twenty years at hard labor with credit for time served. The same day, the State filed a multiple bill charging the defendant as a third felony offender wherein it was alleged that the defendant previously pleaded guilty to manslaughter in Case No. 353-070 and simple burglary in Case No. 313-539. After a hearing, the trial court adjudicated the defendant a triple offender, vacated his sentence, and sentenced him as a triple offender to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. On September 26, 2011, after this court affirmed the conviction but remanded the matter back for consideration of the defendant’s motion to reconsider, the trial court denied the motion, indicating its belief that it had no discretion but to impose the mandatory life sentence under the Habitual Offender Statute, La.Rev. Stat. 15:529.1. The defendant appeals, arguing that it was error for the trial court to adjudicate him a triple offender and, as such, his sentence is excessive.

Assignment of Error 1

First, with regard to the defendant’s argument as to his adjudication as a triple offender,[1] to obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. For this purpose, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record is sufficient to establish that the defendant is the same person convicted of the prior felony offense. See State v. Wolfe, 99-0389, pp. 4-5 (La.App. 4 Cir. 4/19/00), 761 So.2d 596, 599-600.
The scheme for burdens of proof in habitual offender proceedings adopted by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769 (La.1993) was more recently summarized by this court as follows:
*809 If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an “imperfect” transcript. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary.
State v. Francois, 2002-2056, p. 6 (La.App. 4 Cir. 9/14/04), 884 So.2d 658, 663 (citing Shelton, 621 So.2d at 779-780).
In this case, the State charged the defendant as a habitual offender based on guilty pleas he entered into for manslaughter in 1993 and burglary in 1986. To support the 1993 predicate conviction for manslaughter, the State offered: the bill of indictment charging the defendant with first degree murder on September 14, 1991, in Case No. 353-070; the screening action form dated November 7, 1991; the guilty plea form executed by the defendant on March 24, 1993 wherein the defendant pleaded guilty to the lesser offense of manslaughter; and the docket master. The plea form indicates the defendant was represented by counsel and that |4he waived his rights to a jury trial, against self-incrimination, and to confront his accusers.[2] The docket master also indicates that the defendant was represented by counsel, but does not specifically state that he waived his Boykin rights. To support the defendant’s 1986 conviction, the State introduced the following evidence: the bill of information charging the defendant with simple burglary on March 11, 1986, in Case No. 313-359; the screening action form dated April 10, 1986; the guilty plea form executed by the defendant on April 30, 1986; a minute entry of the plea and a docket master of the court proceedings. The plea form indicates that the defendant was advised of his Boykin rights and represented by an attorney; however, the minute entry and docket master do not detail the colloquy.[3]
In addition, the State called Officer George Jackson, an expert in taking and analyzing fingerprints, who testified that he took the defendant’s fingerprints earlier that day and that they matched the fingerprints contained in the certified packages of the documents in Case No. 353-070 and in Case No. 313-359. The fingerprint card was admitted into evidence.[4]
The defendant contends that the documentation offered by the State was insufficient to establish that the 1986 and 1993 pleas were made knowingly and vol *810 untarily after being advised of his Boykin rights.[5] In any event, Louisiana law 15does not require the State to present such proof. Rather, out jurisprudence provides that when a defendant objects to a prior conviction, the State need only prove the existence of the prior conviction (or, as in this case, convictions) and that the defendant was represented by an attorney at the time he entered the plea. See Shelton, 621 So.2d at 779-780; Francois, 2002-2056, p. 6, 884 So.2d at 663. In addition, La.Rev.Stat. 15:529.1(D)(l)(b) provides:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction alleged in the information was obtained in violation of the constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence, (emphasis added).
Therefore, in this case, the State met its initial burden of proof with regard to the 1993 and 1986 convictions as both the docket masters/minute entries and the guilty plea forms in Case Nos. 353-070 and 313-359 demonstrate that the defendant was represented by an attorney and that he pleaded guilty to the charges. The burden then shifted to the defendant to produce affirmative evidence of a defect in the proceedings or an infringement of his constitutional rights. See Shelton, 621 So.2d at 779-780. Because the defendant failed to produce such evidence at the multiple bill hearing or on appeal and failed to file a written ^response as required by La.Rev.Stat. 15:529.1(D)(l)(b), the burden did not shift back to the State to prove the constitutionality of the defendant’s guilty pleas.
Moreover, although the docket master does not specifically indicate the defendant’s waiver of his Boykin rights, a review of the 1993 and 1986 guilty pleas show that the defendant did, in fact, knowingly and voluntarily waive his rights to jury trial, to confront his accusers, and against self-incrimination as required by Boykin. The 1993 plea form provides that by pleading guilty to the crime of manslaughter, the defendant gave up the right to “trial by judge or jury;” “force the District Attorney to call witnesses, who under oath, would have to testify against me a trial[;] and to have my attorney ask questions of each of those witnesses;” and “testify at trial, if I chose to do so; or remain silent if I could not to testify — and not have my silence held against me, or *811 considered as evidence of my guilt.” The defendant initialed each sentence, indicating a waiver of those rights. The form also states that the defendant was not “forced, coerced, or threatened to enter this plea of guilty;” and understood “all the possible legal consequences of pleading guilty.” The form was signed by the defendant, his attorney, and the trial judge. The form further contained the following sentence before the trial judge’s signature “[tjhis plea of guilty is accepted by the Court as having been knowingly, intelligently, and voluntarily made by the defendant.”
The 1986 form also shows that the defendant understood and was informed of “the nature and cause of the charge to which [he was] pleading guilty” and that by pleading guilty to simple burglary the defendant “waived [his] rights to trial by jury ... [and] rights to confrontation.” The defendant further indicated that he understood that he had a “privilege against self-incrimination” and that by entering into a plea of guilty, he “waive[d] this privilege and in fact, incriminate[d] 17[himself].” The form additionally provided that the defendant entered into the plea of his own “free will and choice” and had “not been forced, threatened, coerced or intimated into making this plea.” This form, like the 1993 form, was executed by the defendant, his attorney, and the trial judge.
Accordingly, the combination of the guilty pleas with the docket master in Case No. 353-070 and the minute entry in Case No 313-359 is sufficient to establish the defendant’s prior two convictions. See State v. Weaver, 99-2177, pp. 14 (La.App. 4 Cir. 12/6/00), 775 So.2d 613, 621 (holding a docket master showing that the defendant was attended by counsel at the time his plea was entered, along with a properly executed waiver of rights/guilty plea form, is sufficient to carry the State’s burden under La.Rev.Stat. 15:529.1); State v. Clesi, 2007-0564, pp. 2-3 (La.11/2/07), 967 So.2d 488, 490 (the presumption of regularity provided in La.Rev.Stat. 15:529.1 means that the trial court could assume the defendant received advice with respect to each of his Boykin rights until the defendant proved otherwise). The trial court was therefore entitled to assume from the guilty plea forms and the minute entry/docket master that the defendant was properly advised of his Boykin rights and knowingly and intelligently waived those rights.
The defendant also challenges his conviction as a multiple offender on the grounds that he was deprived his right to have the multiple bill proceedings, which subjected him to life imprisonment, instituted by grand jury indictment. In addition, he claims he was deprived of his right to a jury trial on the issue of his multiple offender status. Both of these arguments, however, have been rejected by this court. See State v. Landfair, 2010-1693, pp. 4-5 (La.App. 4 Cir. 7/20/11), 70 So.3d 1061, 1065 (a multiple bill constitutes a penalty enhancement rather than a criminal charge and, thus, no indictment is necessary); State v. Vincent, 2010-0764, p. 11 (La.App. 4 Cir. 1/19/11), 56 So.3d 408, 415, writ denied, 2011-0315 (La.6/17/11), 63 So.3d 1038 (no constitutional right to a jury trial exists in multiple bill proceedings because all of the elements necessary to enhance the sentence “can be determined by reviewing the documents submitted in support of the multiple bill of information.”).
Accordingly, this assignment of error is without merit.

Assignment of Error 2

The defendant also argues that the sentence imposed by the trial court is excessive given the circumstances of this *812 case. “A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering.” State v. Smith, 2001-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4 (citation omitted).
Although the maximum punishment for attempted manslaughter is twenty years at hard labor, La.Rev.Stat. 14:(27)31,[6] under the sentencing provisions of La.Rev.Stat. 15:529.1(A)(l)(b)(ii), the mandated punishment for a triple offender is a life sentence without benefit of parole, probation, or suspension of sentence. However, although the Habitual Offender Law has been held constitutional (and, thus, the mandated minimum sentences are presumptively constitutional), a sentence mandated by the statute may still be unconstitutionally excessive if it “makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly 19out of proportion to the severity of the crime.” Landfair, p. 17, 70 So.3d at 1072 (citing State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677 and State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993)). Accordingly, although rare, a downward departure from the minimum sentence mandated by the Habitual Offender Law is possible, although it requires substantial evidence. Thus, “[t]o rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” Landfair, p. 18, 70 So.3d at 1072 (citing State v. Lindsey, 99-3256, 00-3302, p. 5 (La.10/17/00), 770 So.2d 339, 343 and Johnson, 97-1906, p. 8, 709 So.2d at 677).
In this case, the defendant moved for a downward departure under Dorthey in his motion to reconsider sentence filed August 3, 2010. In that motion, the defendant asserted his was an “exceptional case under the Habitual Offender Law” because “the legislature did not foresee locking up someone for the rest of their life for a fight in [which] he was not the aggressor and which the victim’ was returned home by the doctors the very next day.” On appeal, the defendant again argues that a life sentence is unconstitutionally excessive considering that he was “not the initiator or aggressor” and because “his role in the instant offense is one of reacting to a situation or defending himself.” The defendant also notes in his brief that the trial court denied his motion to reconsider “without considering whether Dorthey applied.”
|1f>A review of the transcript reveals this argument has merit. Specifically, the hearing transcript provides:
BY THE COURT:
I know this is a Motion to Reconsider, but the thing is I think that dictates of the Statute when the Legislature says ... he was a triple offender, life impris *813 onment, so there was no discretion on the part of the Court.
I don’t know what a motion to reconsider really means on this. I don’t-1 mean, when he was found to be a triple offender, it was a triple offender, life. The discretion on the Court on the evidence presented to it that he gets life without benefit of probation, parole of suspension of sentence. And it just seems like this motion in [sic] inappropriate
BY MS. SCHIFFMAN:
Judge, I believe[d] they file[d] it to protect the record.
BY THE COURT
Protecting what record?
I don’t have discretion.
[[Image here]]
BY MR. ENGELBERG:
My understanding is that Mr. Sims-
BY THE COURT:
I don’t see the purpose for you filing a motion when the Court can’t. You file a motion to reconsider the sentence and I can’t reconsider it.
BY MR. ENGELBERG:
I understand, Your Honor.
BY THE COURT:
Your beef has got to be with the legislature and not me.
[[Image here]]
BY MR. ENGELBERG:
I believe that Mr. Sims had filed this on his own, and he asked that he have representation. His wife ha[d] called me.
BY THE COURT:
Where is he?
BY MS. SCHIFFMAN:
He is in Angola, Judge
|nBY MR. ENGELBERG:
I have a writ here, if you want to just have the hearing and do this in front of him, Your Honor.
BY THE COURT
No.
I am going to summarily deny it because I have no discretion anyhow.
Accordingly, the trial judge did not reach the issue of whether a downward deviation was warranted under Dorthey because he believed that it was not within his discretionary authority to impose a sentence other than the life sentence mandated by La.Rev.Stat. 15:529.1. As the Louisiana Supreme Court has repeatedly stated, this is error. See State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672 and State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339.
The Habitual Offender Law is constitutional and, therefore, the minimum sentences are also presumptively constitutional. The Louisiana Legislature’s determination of an appropriate minimum sentence is entitled to great deference by the judiciary, but it does remain within the authority of the judiciary, albeit in rare situations, “to pronounce a constitutional sentence if it determines that a mandatory minimum sentence is excessive in a particular case.” Johnson, p. 6, 709 So.2d at 676. Thus, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
*814 Id. (citation omitted); Lindsey, 99-3302, p. 5, 770 So.2d at 343 (citing Johnson, supra).
| ^Accordingly, because the trial court’s comments indicate a belief that it had no discretion in sentencing under the Habitual Offender Law and, thus, no choice but to impose a life sentence on the defendant as a triple offender, we remand the matter back to the trial court for resentencing and to allow the defendant the opportunity to present evidence in an attempt to prove that the mandatory minimum life sentence without benefits is unconstitutionally excessive as applied to him. State v. Rice, 2001-0215, p. 5 (La.App. 4 Cir. 1/16/02), 807 So.2d 350, 354-355 (district court did have “the judicial powers” to consider a sentence other than life imprisonment and it was error for district court not to do so upon defendant’s request); see also State v. Green, 10-0008, p. 9 (La.App. 4 Cir. 11/17/10), 52 So.3d 253, 259 (remanding for new sentencing hearing where the trial court sentenced a third felony offender to life imprisonment without benefits based on mistaken belief that it lacked discretion necessary to downwardly depart from the minimum habitual offender sentence, so that the defendant could attempt to prove by clear and convincing evidence that he was an exceptional case such that presumptive life term was excessive); State v. Hall, 2010-1516, pp. 5-6 (La.App. 4 Cir. 4/18/11), 64 So.3d 339, 342-343 (vacating life sentence imposed on a third felony offender when the trial court misunderstood the current sentencing range and felt it did not have the discretion to impose a sentence other than life and remanding for resentencing to afford the defendant the chance to show the mandatory life sentence is unconstitutionally excessive under Dorthey); but see State v. Williams, 2005-0176 (La.App. 4 Cir. 5/3/06), 932 So.2d 693 (finding no abuse in imposing a life sentence on a third felony offender where the trial court considered the defendant’s evidence in support of a lesser sentence but chose to |1sbase its decision on the presentence investigation that showed the defendant had an extensive criminal history).

Conclusion

Because there was sufficient evidence demonstrating that the defendant had two prior convictions, the trial court did not err in adjudicating the defendant a triple offender. However, because the trial court misstated its sentencing authority, the defendant’s sentence is vacated and the matter is remanded for a new hearing on the defendant’s motion to reconsider to allow him the opportunity to present any mitigating factors, like those referenced in his brief and his motion to reconsider, and attempt to show a life sentence is excessive under the circumstances.
MULTIPLE OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESEN-TENCING.

. The State claims that this assignment of error is barred by the doctrine of res judicata because the defendant’s conviction and multiple offender adjudication were affirmed in Sims, 2010-1227, 75 So.3d 478. However, in that case we only discussed the sufficiency of evidence to convict the defendant of attempted manslaughter and did not address the merits of the trial court’s decision to adjudicate him as a triple offender and, accordingly, the defendant has the right to challenge his status as a triple offender.

. The defendant received twenty-one years with credit for time served as part of the 1993 plea agreement.

. The defendant was sentenced to four years at the Department of Corrections with credit for time served and five years probation in conjunction with his 1986 guilty plea. The trial court also placed several special conditions on defendant’s probation. Id.

.The State introduced Defendant's fingerprint card as State's Exhibit 1.

. The defendant also claims that the State failed to meet its burden of proof because it did not present "marked evidentiary exhibits” to establish his prior convictions. Although Off. Jackson’s testimony did not discuss the details of the defendant’s prior pleas, the transcript from the hearing specifically shows that the State introduced a "[b]ill, a plea of guilty form, docket master ... minute entries, screening action form, and an arrest register” in Case No. 355-070 as State’s Exhibit 2 and "a bill of information ... with a set of prints, plea of guilty form, docket master, minute entry, a screening action form, and an arrest register” in Case No. 313-539 as State’s Exhibit 3.

. La.Rev.Stat. 14:31(B) provides for a range of punishment for the offense of manslaughter of "not more than forty years" at hard labor. The attempt statute, in pertinent part, provides that the offender "shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.” La. R.S. 14:27(D)(3).